# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MISSOURI
## EASTERN DIVISION

| | |
|---|---|
| PIERRE WATSON, | ) |
| Plaintiff, | ) |
| v. | ) No. 4:18-cv-00764-NAB |
| ZACHARY DRISKILL, et al., | ) |
| Defendants. | ) |

## OPINION, MEMORANDUM AND ORDER

This matter is before the Court on review of plaintiff's amended complaint pursuant to 28 U.S.C. § 1915. Having reviewed the amended complaint, and for the reasons discussed below, the Court will dismiss the official capacity claims against all defendants, as well as the individual capacity claims against defendants Michelle Unknown and Unknown Fulh. However, the Court will direct the Clerk of Court to issue process on defendants Zachary Driskill, Jessica Hanner, and Diane Manley in their individual capacities as to plaintiff's failure to protect claim.

### Legal Standard on Initial Review

Under 28 U.S.C. § 1915(e)(2), the Court is required to dismiss a complaint filed in forma pauperis if it is frivolous, malicious, or fails to state a claim upon which relief can be granted. To state a claim under 42 U.S.C. § 1983, a plaintiff must demonstrate a plausible claim for relief, which is more than a "mere possibility of misconduct." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. at 678. Determining whether a complaint states a plausible claim for relief is a context-specific task that requires the reviewing court to draw upon judicial experience and common sense. *Id*. at 679. The

court must "accept as true the facts alleged, but not legal conclusions or threadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Barton v. Taber*, 820 F.3d 958, 964 (8th Cir. 2016). *See also Brown v. Green Tree Servicing LLC*, 820 F.3d 371, 372-73 (8th Cir. 2016) (stating that court must accept factual allegations in complaint as true, but is not required to "accept as true any legal conclusion couched as a factual allegation").

When reviewing a pro se complaint under § 1915(e)(2), the Court must give it the benefit of a liberal construction. *Haines v. Kerner*, 404 U.S. 519, 520 (1972). A "liberal construction" means that if the essence of an allegation is discernible, the district court should construe the plaintiff's complaint in a way that permits his or her claim to be considered within the proper legal framework. *Solomon v. Petray*, 795 F.3d 777, 787 (8th Cir. 2015). However, even pro se complaints are required to allege facts which, if true, state a claim for relief as a matter of law. *Martin v. Aubuchon*, 623 F.2d 1282, 1286 (8th Cir. 1980). *See also Stone v. Harry*, 364 F.3d 912, 914-15 (8th Cir. 2004) (stating that federal courts are not required to "assume facts that are not alleged, just because an additional factual allegation would have formed a stronger complaint"). In addition, affording a pro se complaint the benefit of a liberal construction does not mean that procedural rules in ordinary civil litigation must be interpreted so as to excuse mistakes by those who proceed without counsel. *See McNeil v. United States*, 508 U.S. 106, 113 (1993).

**Background**

Plaintiff is a pro se litigant who is currently incarcerated at the Randolph County Jail in Chester, Illinois. On May 16, 2018, plaintiff filed a civil action complaining of constitutional violations that allegedly occurred while he was an inmate at the Crawford County Jail in Steeleville, Missouri. (Docket No. 1). On July 16, 2018, plaintiff filed a motion to amend or correct

his complaint by interlineation. (Docket no. 8). The Court denied the motion, but gave plaintiff thirty days in which to file an amended complaint. (Docket No. 11).

After seeking four separate extensions of time, plaintiff filed his amended complaint on June 18, 2019. (Docket No. 26). In addition, he has filed two motions for appointment of counsel. (Docket No. 27; Docket No. 30).

**The Amended Complaint**

Plaintiff brings this pro se civil action pursuant to 42 U.S.C. § 1983. He names Lieutenant Zachary Driskill, Sergeant Jessica Hanner, Corporal Diane Manley, Nurse Michelle Unknown, and Dr. Unknown Fulh as defendants. (Docket No. 26 at 2-4). The defendants are sued in both their official and individual capacities.

Plaintiff states that at the time the events in the amended complaint occurred, he was a federal inmate in the custody of the Crawford County Sheriff's Department. (Docket No. 26 at 12). In early April 2017, he was in an altercation with an inmate named John Hendrichs. (Docket No. 26 at 13). As a result of this incident, inmate Hendrichs was moved from Housing Unit C to Housing Unit B in order to separate him from plaintiff.

On June 17, 2017, plaintiff was placed on ten days' lockdown for a "fabricated violation of institutional rules" after he "supposedly" threatened an officer. He was also moved from Housing Unit C to Housing Unit B, and placed into a lockdown cell next to inmate Hendrichs. Plaintiff states that he requested a disciplinary hearing to dispute the charges against him. Although an officer named Kevin Brown attempted to persuade plaintiff not to have a hearing, plaintiff insisted, filling out a form and signing it in front of Brown.

When plaintiff noticed that he had been placed in a cell right next to inmate Hendrichs, he alleges that he immediately asked Corporal Manley and Sergeant Hanner to move him, as he

"feared for his life." According to plaintiff, both Manley and Hanner denied his request, advising him that there was no room in the jail to move him. Plaintiff states this is not true. Plaintiff filled out a prisoner request form addressed to Corporal Manley and Sergeant Hanner, asking to be moved. (Docket No. 26 at 14). He also requested permission to speak to the lieutenant, which was denied.

On June 18, 2017, Corporal Manley and Sergeant Hanner came to his cell to speak to him about his request for a disciplinary hearing and his request to be moved. Plaintiff states that Manley and Hanner advised him that his request to be moved was denied. He was also told that he could not have a disciplinary hearing due to a jail policy prohibiting hearings for "parole/probation offender[s]." Plaintiff states that he told Corporal Manley and Sergeant Hanner that he was not being incarcerated for violating probation or parole. Plaintiff also states that he asked Officer Brown to check his booking sheet, which would show that plaintiff was being held on federal charges. Officer Brown denied plaintiff's request and advised plaintiff to fill out a prisoner request form or grievance.

On June 19, 2017, plaintiff filed a Level I grievance with Sergeant Hanner with regard to his request for a disciplinary hearing and his request to be moved to another housing unit. On June 20, 2017, Sergeant Hanner responded to plaintiff's request by telling him that she had already spoken to him about his requests, and that they were denied. That same day, plaintiff states that he filed a Level II grievance addressed to Lieutenant Driskill. This grievance requested that plaintiff be rebooked as a federal inmate and that he be allowed to receive a disciplinary hearing.

On June 21, 2017, Lieutenant Driskill verbally denied plaintiff's request to be rebooked. He also denied plaintiff's request to be moved to a different housing unit. Plaintiff states that Lieutenant Driskill also placed him on "permanent lockdown per orders of the U.S. Marshals

4

office" until further notice. Plaintiff filled out another prisoner request form addressed to Corporal Manley, requesting that he either be given a hearing or released off lockdown and placed into his original housing unit. (Docket no. 26 at 15). He also requested that the U.S. Marshals be contacted to verify the lockdown order. On June 22, 2017, Corporal Manley told him that the U.S. Marshals had been contacted.

Plaintiff filed a Level I grievance addressed to Sergeant Hanner on June 23, 2017, again requesting that the U.S. Marshals be contacted to verify the lockdown order. Sergeant Hanner came to plaintiff's cell to speak with him on June 24, 2017. According to plaintiff, Sergeant Hanner advised him that he would remain on permanent lockdown status until further notice. Sergeant Hanner also denied plaintiff's requests to be moved back to his original housing unit, to be rebooked as an inmate with a federal charge, and to receive a disciplinary hearing.

On June 24, 2017, plaintiff learned from his attorney that the U.S. Marshals office was unaware of any lockdown order. Plaintiff filed a motion for removal of the lockdown order in his criminal case. The motion was denied.

On June 27, 2017, plaintiff's attorney spoke with someone at the Crawford County Sheriff's Department. As a result, plaintiff was released from lockdown. In total, he states he spent ten days on lockdown for "fabricated" reasons.

Also on June 27, 2017, plaintiff alleges that Officer Mathew Unknown unlocked inmate Hendrichs' cell. (Docket No. 26 at 16). This allowed inmate Hendrichs to access plaintiff's cell while plaintiff was sleeping. Inmate Hendrichs allegedly hit plaintiff in the head with an object, waking him. Plaintiff states that Officer Mathew Unknown "just stood there and watched the altercation" while plaintiff was "continuously hit in the head with the object." He states he was also kicked in the head and face once he fell to the floor.

5

Plaintiff eventually managed to flee from the cell, whereupon he picked "up a food tray and used it as a weapon to defend himself." He states that the attack "took place for several moments" before officers began to intervene. Afterwards, he was taken to the medical unit where he received medical attention for bruised ribs, a bloody nose and mouth, and "sever[e] head trauma." Plaintiff received ten days' lockdown for the altercation with inmate Hendrichs.

On June 28, 2017, plaintiff filed a Level I grievance addressed to Sergeant Hanner, asking to be taken off lockdown because he had been the one who was assaulted. The following day, Sergeant Hanner denied plaintiff's grievance. Plaintiff then filed a Level II grievance to appeal the denial of his Level I grievance. The Level II grievance was addressed to Lieutenant Driskill. On June 30, 2017, Lieutenant Driskill denied plaintiff's Level II grievance.

Plaintiff states that as a result of his altercation with inmate Hendrichs, he received a lump on the left side of his head that gave him headaches. (Docket No. 26 at 17). On July 1, 2017, July 3, 2017, and July 10, 2017, he filled out sick call forms in order to see Nurse Michelle. Plaintiff was not seen by Nurse Michelle until early August 2017. At that appointment, Nurse Michelle "determined that the lump was a result of the head trauma" received during plaintiff's altercation with inmate Hendrichs. However, she "only" prescribed plaintiff ibuprofen. In late August 2017, plaintiff "filled out a fourth sick call request form to see Nurse Michelle because the ibuprofen was not working for the headaches and pain."

Plaintiff saw Dr. Fulh in early September 2017. Dr. Fulh examined plaintiff's head and determined that plaintiff only needed more ibuprofen. Plaintiff states that Dr. Fulh denied his request to be sent to an outside hospital to receive a second opinion, or to receive an X-ray or MRI.

Plaintiff filed a Level I grievance in early October 2017, requesting to be taken to an outside hospital. He was advised by Sergeant Hanner that he needed to fill out a sick call request form. In

response, plaintiff filed a Level II grievance. (Docket No. 26 at 18). Lieutenant Driskill responded to this grievance by denying plaintiff's request to be taken to an outside hospital.

On October 31, 2017, plaintiff filed another Level I grievance requesting that he be seen by Nurse Michelle and Dr. Fulh so that he could be taken to an outside hospital for "proper treatment." Lieutenant Driskill denied the grievance on November 1, 2017.

Plaintiff accuses Lieutenant Driskill, Sergeant Hanner, and Corporal Manley of violating his due process rights by fabricating an incident report and not allowing him to refute it via a hearing; illegally placing him on lockdown; and by placing him in the same unit with an inmate with whom he had already had an altercation. (Docket No. 26 at 23). He also asserts that Lieutenant Driskill, Sergeant Hanner, and Corporal Manley refused his request for outside medical treatment, and retaliated against him for filing numerous grievances and contacting the U.S. Marshals by allowing inmate Hendrichs to assault him. Plaintiff further claims that Nurse Michelle and Dr. Fulh violated his Eighth Amendment right to medical care by not sending him to an outside hospital for his injuries.

Plaintiff seeks $250,000 in damages from Lieutenant Driskill, Sergeant Hanner, and Corporal Manley, and $250,000 in damages from Nurse Michelle and Dr. Fulh. He seeks a further $50,000 in punitive damages from each defendant.

**Discussion**

Plaintiff is a pro se litigant who brings this action pursuant to 42 U.S.C. § 1983. Having reviewed the amended complaint, and for the reasons discussed below, the Court will dismiss the official capacity claims against all defendants, as well as the individual capacity claims against defendants Michelle Unknown and Unknown Fulh. However, the Court will direct the Clerk of

Court to issue process on defendants Zachary Driskill, Jessica Hanner, and Diane Manley in their individual capacities as to plaintiff's failure to protect claim.

### A. Official Capacity Claims Against Defendants Driskill, Hanner, and Manley

The official capacity claims against Lieutenant Driskill, Sergeant Hanner, and Corporal Manley must be dismissed. In an official capacity claim against an individual, the claim is actually "against the governmental entity itself." *See White v. Jackson*, 865 F.3d 1064, 1075 (8th Cir. 2017). Thus, a "suit against a public employee in his or her official capacity is merely a suit against the public employer." *Johnson v. Outboard Marine Corp.*, 172 F.3d 531, 535 (8th Cir. 1999). *See also Brewington v. Keener*, 902 F.3d 796, 800 (8th Cir. 2018) (explaining that official capacity suit against sheriff and his deputy "must be treated as a suit against the County"); *Kelly v. City of Omaha, Neb.*, 813 F.3d 1070, 1075 (8th Cir. 2016) (stating that a "plaintiff who sues public employees in their official, rather than individual, capacities sues only the public employer"); and *Elder-Keep v. Aksamit*, 460 F.3d 979, 986 (8th Cir. 2006) (stating that a "suit against a public official in his official capacity is actually a suit against the entity for which the official is an agent"). As such, to prevail on an official capacity claim, the plaintiff must establish the governmental entity's liability for the alleged conduct. *Kelly*, 813 F.3d at 1075.

Plaintiff alleges that Lieutenant Driskill, Sergeant Hanner, and Corporal Manley are employed by the Crawford County Sheriff's Department. Therefore, plaintiff's official capacity claims against these defendants are actually claims against Crawford County itself.

A local governing body such as Crawford County can be sued directly under § 1983. *See Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 690 (1978). Liability may attach if the constitutional violation "resulted from (1) an official municipal policy, (2) an unofficial custom, or (3) a deliberately indifferent failure to train or supervise." *Mick v. Raines*, 883 F.3d

1075, 1079 (8th Cir. 2018). *See also Marsh v. Phelps Cty.*, 902 F.3d 745, 751 (8th Cir. 2018) (recognizing "claims challenging an unconstitutional policy or custom, or those based on a theory of inadequate training, which is an extension of the same"). Plaintiff thus has three ways in which to potentially prove the liability of Crawford County.

First, plaintiff can show the existence of an unconstitutional policy. "Policy" refers to "official policy, a deliberate choice of a guiding principle or procedure made by the municipal official who has final authority regarding such matters." *Corwin v. City of Independence, Mo.*, 829 F.3d 695, 700 (8th Cir. 2016). For a policy that is unconstitutional on its face, a plaintiff needs no other evidence than a statement of the policy and its exercise. *Szabla v. City of Brooklyn, Minn.*, 486 F.3d 385, 389 (8th Cir. 2007). However, when "a policy is constitutional on its face, but it is asserted that a municipality should have done more to prevent constitutional violations by its employees, a plaintiff must establish the existence of a 'policy' by demonstrating that the inadequacies were a product of deliberate or conscious choice by the policymakers." *Id*. at 390. "A policy may be either a policy statement, ordinance, regulation, or decision officially adopted and promulgated by the municipality's governing body." *Angarita v. St. Louis Cty.*, 981 F.2d 1537, 1546 (8th Cir. 1992).

Second, plaintiff can establish a claim of liability based on an unconstitutional "custom." In order to do so, plaintiff must demonstrate:

1) The existence of a continuing, widespread, persistent pattern of unconstitutional misconduct by the governmental entity's employees;

2) Deliberate indifference to or tacit authorization of such conduct by the governmental entity's policymaking officials after notice to the officials of that misconduct; and

3) That plaintiff was injured by acts pursuant to the governmental entity's custom, i.e., that the custom was a moving force behind the constitutional violation.

*Johnson v. Douglas Cty. Med. Dep't*, 725 F.3d 825, 828 (8th Cir. 2013).

Finally, plaintiff can assert a municipal liability claim by establishing a deliberately indifferent failure to train or supervise. To do so, plaintiff must allege a "pattern of similar constitutional violations by untrained employees." *S.M. v. Lincoln Cty.*, 874 F.3d 581, 585 (8th Cir. 2017).

Plaintiff does not need to specifically plead the existence of an unconstitutional policy or custom. *See Crumpley-Patterson v. Trinity Lutheran Hosp.*, 388 F.3d 588, 591 (8th Cir. 2004). However, at a minimum, the complaint must allege facts supporting the proposition that an unconstitutional policy or custom exists. *Doe ex rel. Doe v. Sch. Dist. of City of Norfolk*, 340 F.3d 605, 614 (8th Cir. 2003).

Here, plaintiff has failed to establish that the alleged constitutional violations of which he complains were the result of an official policy or unofficial custom on the part of Crawford County. He has also failed to assert any facts to support the proposition that his constitutional rights were violated due to a failure to train. As such, he has failed to state a claim against Crawford County, and plaintiff's official capacity claims against Lieutenant Driskill, Sergeant Hanner, and Corporal Manley must be dismissed. *See Ulrich v. Pope Cty.*, 715 F.3d 1054, 1061 (8th Cir. 2013) (affirming district court's dismissal of *Monell* claim where plaintiff "alleged no facts in his complaint that would demonstrate the existence of a policy or custom" that caused the alleged deprivation of plaintiff's rights).

**B. Official Capacity Claims Against Defendants Michelle Unknown and Dr. Fulh**

Plaintiff's official capacity claims against Nurse Michelle and Dr. Fulh must be dismissed. As noted above, an official capacity claim against an individual is actually a claim against the governmental entity employing the individual. *See White*, 865 F.3d at 1075. Plaintiff states that Nurse Michelle and Dr. Fulh are employed by Advanced Correctional Healthcare, which is the healthcare provider for the Crawford County Sheriff's Department. Therefore, plaintiff's official capacity claims against Nurse Michelle and Dr. Fulh are actually claims against Advanced Correctional Healthcare itself.

"A corporation acting under color of state law cannot be liable on a respondeat superior theory." *Smith v. Insley's Inc.*, 499 F.3d 875, 880 (8th Cir. 2007). Rather, to support a claim against such a corporation, the plaintiff "must show that there was a policy, custom, or official action that inflicted an actionable injury." *Johnson v. Hamilton*, 452 F.3d 967, 973 (8th Cir. 2006). *See also Sanders v. Sears, Roebuck & Co.*, 984 F.2d 972, 975 (8th Cir. 1993) (stating that a corporation acting under color of state law will only be held liable where "there is a policy, custom or action by those who represent official policy that inflicts injury actionable under § 1983").

Here, plaintiff has not presented any facts alleging that a policy, custom, or official action on the part of Advanced Correctional Healthcare caused him an actionable injury. Furthermore, as previously stated, Advanced Correctional Healthcare cannot be held liable on a respondeat superior theory. Therefore, plaintiff has failed to state an official capacity claim against either Nurse Michelle or Dr. Fulh.

**C. Individual Capacity Claims Against Defendants Driskill, Hanner, and Manley**

Plaintiff asserts several claims against Lieutenant Driskill, Sergeant Hanner, and Corporal Manley. First, he alleges that his right to due process was violated when he was placed on

lockdown for a "fabricated" incident report and not given a hearing to refute the charge. Second, he states that Lieutenant Driskill, Sergeant Hanner, and Corporal Manley retaliated against him for filing grievances by allowing inmate Hendrichs to assault him. Third, he states that Lieutenant Driskill, Sergeant Hanner, and Corporal Manley were deliberately indifferent to his medical needs by not approving his request to go to an outside hospital. Finally, he alleges that Lieutenant Driskill, Sergeant Hanner, and Corporal Manley failed to protect him by placing him next to inmate Hendrichs, and by refusing his request to be moved.

> i. **Fabricated Incident Report and Denial of Hearing**

Plaintiff states that he was placed on ten days' lockdown for a "fabricated violation of institutional rules" for "supposedly" threatening an officer. He also states that once he was placed on lockdown, he was denied a disciplinary hearing due to his inmate classification.

As to plaintiff's claim that he was given a fabricated incident report, an alleged false incident report, standing alone, does not state a constitutional violation. *See Sprouse v. Babcock*, 870 F.2d 450, 452 (8th Cir. 1989). Moreover, plaintiff has not provided any factual support for his contention that the incident report he received was fabricated. Instead, he presents the allegation in the form of a conclusion, which is insufficient to state a claim. *See Neubauer v. FedEx Corp.*, 849 F.3d 400, 404 (8th Cir. 2017) (stating that a complaint does not suffice "if it tenders naked assertions devoid of further factual enhancement").

As to plaintiff's claim that he was unconstitutionally denied a disciplinary hearing, the determination of whether prison officials denied an inmate due process involves a two-step inquiry. *Williams v. Hobbs*, 662 F.3d 994, 1000 (8th Cir. 2011). First, a plaintiff must demonstrate that he or she was deprived of life, liberty, or property by government action. *Phillips v. Norris*, 320 F.3d 844, 846 (8th Cir. 2003). *See also Beaulieu v. Ludeman*, 690 F.3d 1017, 1047 (8th Cir.

2012) (stating that a court "need reach the question of what process is due only if the inmates establish a constitutionally protected liberty interest"); and *Singleton v. Cecil*, 155 F.3d 983, 987 (8th Cir. 1998) (explaining that to claim a due process violation, plaintiff has to be deprived of either life, liberty, or property, otherwise "it does not matter whether one has received due process or not"). Once it has been established that a liberty interest exists, the process necessary to protect that interest must be determined. *Williams*, 662 F.3d at 1000.

With regard to establishing a liberty interest, the United States Supreme Court has determined that prisoners have a protected liberty interest in avoiding conditions of confinement that impose "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin v. Conner*, 515 U.S. 472, 484 (1995). Plaintiff, however, has not demonstrated that his placement into lockdown for a period of ten days was an "atypical and significant hardship." He has not shown, for instance, that the length of time in lockdown was inappropriate. *See Orr v. Larkins*, 610 F.3d 1032, 1033-34 (8th Cir. 2010) (stating that nine months in administrative segregation did not constitute an atypical and significant hardship). He has also not alleged that his placement in lockdown resulted in a restriction of privileges or the loss of credit. Because he has not established a protected liberty interest, he has failed to state a claim that his right to due process was violated.

### ii. Retaliation

Plaintiff states that Lieutenant Driskill, Sergeant Hanner, and Corporal Manley retaliated against him by opening his cell door and allowing inmate Hendrichs to assault him. He states this occurred because of his filing of numerous grievances and because he contacted the U.S. Marshals to tell them about the treatment he was receiving in Crawford County.

The right to be free from retaliation for availing oneself of the grievance process is clearly established in the Eighth Circuit. *Santiago v. Blair*, 707 F.3d 984, 991 (8th Cir. 2013). *See also Nelson v. Shuffman*, 603 F.3d 439, 450 (8th Cir. 2010) (stating "that actions taken in retaliation for an inmate's filing of a grievance are actionable under 42 U.S.C. § 1983"). However, plaintiff presents this claim in the form of a conclusion. For example, he does not present any facts alleging which defendant – if any – specifically opened the door. He also does not present any facts supporting his contention that the door was opened with the intent that plaintiff be assaulted. Further, plaintiff does not present any facts showing that this action was taken against him because of his filing of grievances. Rather than facts, plaintiff has provided a conclusory statement that does little more than recite the elements of a cause of action. This is insufficient to state a claim. *See Johnson v. Precythe*, 901 F.3d 973, 977 (8th Cir. 2018) (explaining that "[a] pleading must offer more than labels and conclusions or a formulaic recitation of the elements of a cause of action to state a plausible claim for relief").

### iii. Deliberate Indifference to Medical Needs

Plaintiff alleges that Lieutenant Driskill, Sergeant Hanner, and Corporal Manley were deliberately indifferent to his medical needs by not approving his request to be sent to an outside hospital. To state a deliberate indifference claim, a prisoner must allege "(1) that he suffered objectively serious medical needs and (2) that the prison officials actually knew of but deliberately disregarded those needs." *Hamner v. Burls*, 937 F.3d 1171, 1177 (8th Cir. 2019). Deliberate indifference may be demonstrated by a showing that the medical care received by a prisoner was "so inappropriate as to evidence intentional maltreatment." *Fourte v. Faulkner Cty., Ark.*, 746 F.3d 384, 387 (8th Cir. 2014).

Plaintiff has not established that Lieutenant Driskill, Sergeant Hanner, or Corporal Manley were deliberately indifferent to his medical needs. In his complaint, plaintiff states that he was seen by medical staff on the day of his assault by inmate Hendrichs, and was seen by Nurse Michelle and Dr. Fulh thereafter. There are no allegations that defendants Driskill, Hanner, or Manley interfered with this process in any way. The only assertion that plaintiff makes against them is that they did not approve a request for him to be taken to an outside hospital. However, he admits that Dr. Fulh also denied his request. Plaintiff makes clear that his preference was to be seen by an outside hospital, and that he disagreed with the decision not to allow this. Nevertheless, he has not presented any facts showing that Driskill, Hanner, and Manley's refusal to allow him to be taken to an outside hospital constituted a deliberate disregard of his medical needs bordering on "intentional maltreatment."

### iv. Failure to Protect

Plaintiff states that Lieutenant Driskill, Sergeant Hanner, and Corporal Manley failed to protect him when they placed him in a cell next to inmate Hendrichs, with whom he had an earlier altercation. He further states that Driskill, Hanner, and Manley failed to move him, despite his repeated requests.

Being subjected to assault is not part of the penalty that criminal offenders must pay for their offenses. *Young v. Selk*, 508 F.3d 868, 871 (8th Cir. 2007). As such, prison inmates have a clearly established Eighth Amendment right to be protected from violence by other inmates. *Curry v. Crist*, 226 F.3d 974, 977 (8th Cir. 2000). Prison officials must take reasonable measures to guarantee inmate safety and to protect prisoners from violence at the hands of other prisoners. *Berry v. Sherman*, 365 F.3d 631, 633-34 (8th Cir. 2004). However, not every injury suffered by one prisoner at the hands of another prisoner translates into constitutional liability. *Whitson v.*

15

*Stone Cty. Jail*, 602 F.3d 920, 923 (8th Cir. 2010). "Rather, prison officials violate the Eighth Amendment only when they exhibit a deliberate or callous indifference to an inmate's safety." *Patterson v. Kelley*, 902 F.3d 845, 851 (8th Cir. 2018).

Plaintiff's failure to protect claim is sufficient to survive 28 U.S.C. § 1915 review. Plaintiff states that he had an altercation with inmate Hendrichs that caused them to be separated. He further states that when he was placed in lockdown, he was put in a cell right next to inmate Hendrichs, though he alleges there was another lockdown unit in the jail. Plaintiff asserts that he requested to be moved, and that he made this request to Lieutenant Driskill, Sergeant Hanner, and Corporal Manley. Despite his claim that he was in danger, his request to move was denied. These allegations must be accepted as true. *See Jones v. Douglas Cty. Sheriff's Dep't*, 915 F.3d 498, 499 (8th Cir. 2019) (stating that a court must accept the allegations contained in the complaint as true and make all reasonable inferences in favor of the plaintiff). As such, the Clerk of Court will be directed to issue process on Lieutenant Driskill, Sergeant Hanner, and Corporal Manley in their individual capacities as to plaintiff's claim of failure to protect.

### D. Individual Capacity Claims Against Nurse Michelle and Dr. Fulh

Plaintiff's individual capacity claims against Nurse Michelle and Dr. Fulh for deliberate indifference to his medical needs must be dismissed. Under the Eighth Amendment, the government has an obligation to provide medical care to those whom it is punishing by incarceration. *Estelle v. Gamble*, 429 U.S. 97, 103 (1976). To demonstrate constitutionally inadequate medical care, the inmate must show that a prison official's conduct amounted to deliberate indifference. *Dulany v. Carnahan*, 132 F.3d 1234, 1237-38 (8th Cir. 1997).

In order to establish deliberate indifference, a plaintiff must prove that he suffered from an objectively serious medical need, and that prison officials actually knew of and disregarded that

need. *Roberts v. Kopel*, 917 F.3d 1039, 1042 (8th Cir. 2019). *See also Phillips v. Jasper Cty. Jail*, 437 F.3d 791, 795 (8th Cir. 2006). "A serious medical need is one that has been diagnosed by a physician as requiring treatment, or one that is so obvious that even a layperson would easily recognize the necessity for a doctor's attention." *Coleman v. Rahija*, 114 F.3d 778, 784 (8th Cir. 1997). Deliberate indifference can include the intentional denial or delay of access to medical care, or the intentional interference with treatment or prescribed medication. *Vaughn v. Lacey*, 49 F.3d 1344, 1346 (8th Cir. 1995).

To prevail under this standard, an inmate must demonstrate that a prison health care provider's actions were "so inappropriate as to evidence intentional maltreatment or a refusal to provide essential care." *Jackson v. Buckman*, 756 F.3d 1060, 1066 (8th Cir. 2014). As such, "deliberate indifference requires a highly culpable state of mind approaching actual intent." *Kulkay v. Roy*, 847 F.3d 637, 643 (8th Cir. 2017). Thus, a showing of deliberate indifference requires more than a mere disagreement with treatment decisions and is greater than gross negligence. *Gibson v. Weber*, 433 F.3d 642, 646 (8th Cir. 2006).

As to Nurse Michelle, plaintiff asserts that he was not able to see Nurse Michelle until he had filled out three medical sick call requests, and that when he did see her, she only prescribed ibuprofen. These factual allegations fail to demonstrate that Nurse Michelle was deliberately indifferent to his medical needs. There is no indication that the delay between his initial receipt of medical attention on June 27, 2017, and his appointment with Nurse Michelle in early August 2017, was the result of an intentional act on the part of Nurse Michelle that was so inappropriate as to evidence maltreatment. Furthermore, plaintiff's contention that Nurse Michelle's prescription of ibuprofen was inappropriate is a mere disagreement with a treatment decision, and does not constitute deliberate indifference. *See Johnson v. Leonard*, 929 F.3d 569, 576 (8th Cir. 2019)

17

(stating that a prisoner's disagreement with medical staff with the decision to offer him over-the-counter medications, rather than prescription pain medication, does not constitute deliberate indifference). Thus, plaintiff's individual capacity claim against Nurse Michelle must be dismissed.

As to Dr. Fulh, plaintiff acknowledges that Dr. Fulh examined the lump on his head and prescribed him ibuprofen. Plaintiff insists that he should have been sent to an outside hospital for tests, but that Dr. Fulh denied his request. Again, as stated above, a showing of deliberate indifference requires more than alleging a disagreement with treatment decisions, which is all that plaintiff has presented. There are no facts to establish that Dr. Fulh's refusal to prescribe something other than ibuprofen, or his refusal to send plaintiff to an outside hospital, amounted to a refusal to provide essential medical care. Thus, plaintiff's individual capacity claim against Dr. Fulh must be dismissed.

### E. Motions to Appoint Counsel

Plaintiff has filed two motions for appointment of counsel. (Docket No. 27; Docket No. 30). In civil cases, a pro se litigant does not have a constitutional or statutory right to appointed counsel. *Ward v. Smith*, 721 F.3d 940, 942 (8th Cir. 2013). *See also Stevens v. Redwing*, 146 F.3d 538, 546 (8th Cir. 1998) (stating that "[a] pro se litigant has no statutory or constitutional right to have counsel appointed in a civil case"). Rather, a district court may appoint counsel in a civil case if the court is "convinced that an indigent plaintiff has stated a non-frivolous claim…and where the nature of the litigation is such that plaintiff as well as the court will benefit from the assistance of counsel." *Patterson*, 902 F.3d at 850. When determining whether to appoint counsel for an indigent litigant, a court considers relevant factors such as the complexity of the case, the ability

of the pro se litigant to investigate the facts, the existence of conflicting testimony, and the ability of the pro se litigant to present his or her claim. *Phillips*, 437 F.3d at 794.

After reviewing these factors, the Court finds that the appointment of counsel is not warranted at this time. Plaintiff has demonstrated, at this point, that he can adequately present his claims to the Court. Additionally, neither the factual nor the legal issues in this case appear to be complex. The Court will entertain future motions for appointment of counsel as the case progresses.

Accordingly,

**IT IS HEREBY ORDERED** that plaintiff's motions for appointment of counsel (Docket No. 27; Docket No. 30) are **DENIED** at this time.

**IT IS FURTHER ORDERED** that the Clerk of Court shall issue process or cause process to issue on defendants Zachary Driskill, Jessica Hanner, and Diane Manley in their individual capacities as to plaintiff's claim of failure to protect.

**IT IS FURTHER ORDERED** that plaintiff's official capacity claims against all defendants are **DISMISSED** without prejudice for failure to state a claim. *See* 28 U.S.C. § 1915(e)(2)(B).

**IT IS FURTHER ORDERED** that plaintiff's individual capacity claims against defendants Michelle Unknown and Unknown Fulh are **DISMISSED** without prejudice for failure to state a claim. *See* 28 U.S.C. § 1915(e)(2)(B).

**IT IS FURTHER ORDERED** that plaintiff's individual capacity claims against defendants Zachary Driskill, Jessica Hanner, and Diane Manley are **DISMISSED** without prejudice for failure to state a claim, **with the exception** of plaintiff's claim of failure to protect. *See* 28 U.S.C. § 1915(e)(2)(B).

**IT IS FURTHER ORDERED** that an appeal from this partial dismissal would not be taken in good faith.

A separate order of partial dismissal will be entered herewith.

Dated this 13th day of January, 2020.

                                          HENRY EDWARD AUTREY
                                          UNITED STATES DISTRICT JUDGE