UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| PIERRE WATSON, | ) |
| | ) |
|     Plaintiff, | ) |
| | ) |
|   vs. | )   Case No. 4:18-CV-00764-AGF |
| | ) |
| ZACHARY DRISKILL, et al., | ) |
| | ) |
|     Defendants. | ) |

## **MEMORANDUM AND ORDER**

This matter is before the Court on a motion for summary judgment filed by Defendant Officers Zachary Driskill and Jessica Hanner in this prisoner civil rights case brought by self-represented Plaintiff Pierre Watson under 42 U.S.C. § 1983. Defendants are corrections officers at the Crawford County Jail, where Plaintiff was previously incarcerated awaiting the conclusion of court proceedings related to two federal criminal cases.[1] Plaintiff filed this action in May 2018 asserting that Defendants and other officers violated his constitutional rights by failing to protect him from an assault by another inmate.[2] Defendants assert that they are entitled to summary judgment because

---

[1] Following a plea to some counts and bench trial on other counts on November 7, 2016, Watson was sentenced on June 16, 2017 in *United States v. Watson*, Case No. 4:15-CR-440 AGF (E.D. Mo). A bench trial was held in *United States v. Watson*, Case No. 4:16-CR-336 JAR (E.D. Mo.), on December 5, 2016. Findings of fact and conclusions of law were filed on August 21, 2017, and Watson was sentenced on November 16, 2017.

[2] In an earlier ruling on preliminary review under 28 U.S.C. § 1915, the Court dismissed Plaintiff's official capacity claims against all defendants and dismissed his individual capacity claims against two unknown defendants. Doc. 36. The individual capacity claims against Defendants Driskill and Hanner were allowed to proceed. Plaintiff's individual capacity claims

1

(1) Plaintiff failed to exhaust his administrative remedies within the jail before filing suit and (2) Defendants are protected by qualified immunity.  For the reasons set forth below, Defendant's motion will be granted.

## BACKGROUND

**Procedural Record**

The asymmetrical record on this motion delimits the Court's summary of the facts. Defendants filed the motion and supporting documents on May 4, 2021.  Doc. 104. Pursuant to the Case Management Order, Plaintiff's response was due no later than June 4, 2021.  Doc. 83.  Over the course of six months, from June to December 2021, the Court granted Plaintiff five extensions of time to file his response.  Docs. 107-124.   In its last extension Order dated December 8, 2021, the Court accorded Plaintiff until January 21, 2022, to file his response and cautioned Plaintiff that no further extensions would be granted.  Doc. 124.  Plaintiff has not filed a response to date.

Though Plaintiff is proceeding pro se, he still must respond to Defendants' motion "with specific factual support for his claims to avoid summary judgment." *Beck v. Skon*, 253 F.3d 330, 333 (8th Cir. 2001).  When a party "fails to properly address another party's assertion of fact," the Court is authorized to "consider the fact undisputed for purposes of the motion."  Fed. R. Civ. P. 56(e).  Similarly, pursuant to this Court's local rules, absent a response by Plaintiff contesting Defendants' version of the facts, those facts are deemed admitted.  L.R. 4.01(E).  Here, Defendants filed a statement of

---

also proceeded against another officer, Diane Manley, but Plaintiff later voluntarily dismissed those claims.  Doc. 81.

uncontroverted material facts (SUMF) supported by citations to the record and affidavits, to which Plaintiff has made no response. Consequently, the Court reviews the merits of Defendants' motion on the undisputed facts established by Defendants. Accepting as true the entirety of Defendants' statement of uncontroverted material facts and noting Plaintiff's allegations merely for context, the record establishes the following.

**Facts**

Housing units at Crawford County Jail are called "pods" lettered A through F. On June 17, 2017, Plaintiff was placed on lockdown for forcing an inmate out of the C-Pod and threatening an officer. SUMF ¶¶ 16-18. For his lockdown, Plaintiff was moved from the C-Pod to the B-Pod and was placed in a cell next to the one occupied by John Hendrix. SUMF ¶ 19. About a month beforehand, Plaintiff and Hendrix had allegedly had an altercation, though it was not reported to jail staff. Doc. 26 ¶ 7; Doc. 106-1 at 93-94 (Plaintiff's deposition); SUMF ¶ 46.

Plaintiff alleges that, upon his transfer to B-Pod next to Hendrix, he asked, both orally and in a Prisoner Request Form to Defendant Hanner, to be moved to another housing unit because he feared for his life, but the request was denied. Doc. 26 ¶ 15-18. No such form was produced during discovery, and Defendants state that Plaintiff did not notify Hanner of any safety concern relating to Hendrix. SUMF ¶¶ 50, 54. Plaintiff further claims that he filed Level 1 and 2 grievances with Defendants Hanner and Driskill on June 19 and 20, 2017, respectively, each time asking to be moved to a different housing unit. Doc. 26 ¶¶ 21–23. Plaintiff alleges that these grievances were denied and that, according to Driskill, Plaintiff was to remain on lockdown pursuant to an order from

3

the U.S. Marshals. Doc. 26 ¶ 24. Plaintiff alleges that he also asked to see Sheriff Darrin Layman, but Driskill denied that request. Doc. No. 26 ¶ 92. These grievances were not produced during discovery, and the jail has no record of them. SUMF ¶ 51; Doc. 106-12 (Layman affidavit).

Plaintiff did produce a Level 1 grievance dated June 23, 2017, asking that the U.S. Marshals be contacted about his lockdown order. SUMF ¶ 22; Doc No. 106-6. This grievance did not include any allegations that Plaintiff was concerned about his safety due to his proximity to Hendrix. In fact, Plaintiff argued in this grievance that he had not been in any disputes during his incarceration. SUMF ¶ 53; Doc. 106-6. Plaintiff also filed a motion challenging the lockdown order, but the Court denied that motion.[3] Doc. 106, Ex. 7-8. On June 27, 2017, Hanner spoke with the U.S. Marshals Service and learned that Plaintiff did not need to remain on lockdown. SUMF ¶ 27; Doc. 106-5 (Hanner affidavit). Hanner then ordered that Plaintiff be released from lockdown at 1:00 p.m. that day. *Id.* The subject altercation between Plaintiff and Hendrix occurred shortly before that time.

Around 12:00 p.m., Officer Hoyt McCann went into the B-Pod to deliver meals. Doc. 106-9 (McCann affidavit). McCann intended to deliver Hendrix's food tray through a small hole in the cell door. However, for unknown reasons, another officer unlocked Hendrix's cell remotely from the control center. Hendrix immediately exited his cell and entered Plaintiff's neighboring cell, which was also unlocked prematurely, despite

---

[3]   Plaintiff filed the motion on June 26, 2017, in his second criminal case, which was still ongoing, Case No. 4:16-CR-336-JAR (E.D. Mo.).

Hanner's order to lift the lockdown at 1:00 p.m. SUMF ¶¶ 34–36. Hendrix proceeded to attack Plaintiff, who managed to flee from his cell and grab a food tray, which he used to strike Hendrix, causing a laceration requiring stitches. SUMF ¶ 38; Doc. 106-9. At 12:36 p.m., Plaintiff was treated by a prison nurse, who noted facial injuries and provided Tylenol. Doc. 106-11.

According to Defendants' affidavits, the jail had no record of a request or grievance by Plaintiff seeking to be moved to a different housing unit before the incident; Defendants had no knowledge of any prior altercation or concern for Plaintiff's safety from Hendrix; and, at the time of the incident, Defendants believed that both inmates were locked in their respective cells. Doc. 106, Ex. 4 and 5.

Based on the foregoing record, Defendants move for summary judgment in that: (1) Plaintiff failed to exhaust his administrative remedies pursuant to the jail's grievance procedures and (2) Defendants are entitled to qualified immunity. As previously noted, despite being given multiple extensions of time to do so, Plaintiff has not filed a response and the time to do so has passed, so Defendants' uncontroverted facts established by the record are deemed admitted.

## DISCUSSION

**Summary Judgment Standard**

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "Summary judgment should be granted when, viewing the facts most favorably to the nonmoving party and giving that party the benefit of all reasonable

5

inferences, the record shows that there is no genuine issue of material fact." *Schilf v. Eli Lilly & Co.*, 687 F.3d 947, 948 (8th Cir. 2012). "At summary judgment, the court's function is not to weigh the evidence and determine the truth of the matter itself, but to determine whether there is a genuine issue for trial." *Smith v. Kilgore*, 926 F.3d 479, 483 (8th Cir. 2019). "There is a genuine dispute when the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Id.*

**Administrative Exhaustion**

The Prison Litigation Reform Act (PLRA), 42 U.S.C. § 1997e(a), requires that a prisoner exhaust all available administrative remedies before he commences an action under any federal law. Exhaustion means that, before filing suit, Plaintiff is obligated to complete the administrative review process in accordance with applicable procedure. *Woodford v. Ngo*, 548 U.S. 81, 88 (2006). The level of detail will vary from system to system and claim to claim, but it is the prison's requirements, not the PLRA, that define the boundaries of proper exhaustion." *King v. Iowa Dep't of Corr.*, 598 F.3d 1051, 1054 (8th Cir. 2010) (quoting *Jones v. Bock*, 549 U.S. 199, 219 (2007)). Put simply, exhaustion under the PLRA is determined by the prison's grievance procedures. *Flowers-Bey v. Anderson*, 2:19-CV-00070-SRC, 2021 WL 4243169, at *7 (E.D. Mo. Sept. 17, 2021). The PLRA's administrative exhaustion requirement is an affirmative defense that Defendants have the burden to plead and prove. *Id.* (citing *Nerness v. Johnson*, 401 F.3d 874, 876 (8th Cir. 2005)).

Here, the uncontroverted facts demonstrate that Plaintiff failed to exhaust the jail's administrative remedies. Plaintiff had access to the Inmate Rules and Regulations

6

Handbook, which includes requirements for how inmates may file grievances. SUMF ¶¶ 62–63. The handbook identifies four stages of grievances, the fourth being an appeal to the Sheriff. Doc. 106-13 at 6. Plaintiff admits that he filed only Level 1 and 2 grievances. Doc. 106-1 at 126. There is no evidence that Plaintiff submitted a Level 4 grievance, which would be necessary for exhaustion. SUMF ¶ 84. As such, Defendants are entitled to summary judgment on this basis.[4]

Even were this not the case, the record also supports Defendants' additional affirmative defense of qualified immunity.

**Qualified Immunity**

"Qualified immunity protects government officials performing discretionary functions from liability for damages so long as 'their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Curry v. Crist*, 226 F.3d 974, 977 (8th Cir. 2000) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). "To defeat a motion for summary judgment based on qualified immunity, Plaintiff must put forth facts showing that the officer's conduct violated a constitutional right, and that the right was clearly established at the time of the alleged misconduct." *Johnson v. Moody*, 903 F.3d 766, 773 (8th Cir. 2018). An officer

---

[4] Plaintiff alleges that he asked to see the Sheriff but was denied and told that the Sheriff "did not handle things of this nature." Doc. No. 26 ¶ 92. Plaintiff's oral request does not satisfy the formal procedures outlined in the handbook, and Plaintiff has failed to establish that he was actually obstructed from escalating his issues through the proper process. *Cf. Miller v. Norris*, 247 F.3d 736, 740 (8th Cir. 2001) (holding that an inmate was prevented from exhausting administrative remedies when prison officials ignored his requests for grievance forms).

is entitled to qualified immunity "unless a reasonable official would have known that [his] actions constituted a deliberate, callous, or reckless disregard for [Plaintiff's] safety." *Tucker v. Evans*, 276 F.3d 999, 1001 (8th Cir. 2002).

"Prison inmates have a clearly established Eighth Amendment right to be protected from violence by other inmates." *Curry*, 226 F.3d at 977. This right is violated where a prison official "is deliberately indifferent to the need to protect an inmate from a substantial risk of serious harm from other inmates." *Newman v. Holmes*, 122 F.3d 650, 652 (8th Cir.1997). To establish deliberate indifference, a vague and unsubstantiated statement, such as an inmate's "general fear for his safety," is not sufficient; rather, a plaintiff must show that officers knew of a specific, identifiable risk and consciously disregarded it. *Blair v. Bowersox*, 929 F.3d 981, 987-88 (8th Cir. 2019). The standard is akin to criminal recklessness. *Id*.

Applying these principles to the present record, the Court concludes that Defendants are entitled to qualified immunity because the uncontroverted facts establish that Defendants had no knowledge of any specific risk to Plaintiff's safety. The jail had no record of any altercation between Plaintiff and Hendrix prior to subject incident. SUMF ¶ 56. Defendants Hanner and Driskill were not aware of it and had no reason to be concerned about Plaintiff's safety vis-à-vis Hendrix. SUMF ¶¶ 54–56. Plaintiff's inmate file contained numerous grievance forms, but the only one mentioning Hendrix is dated three months *after* this incident. Doc. 106, Ex. 4, 12, 14. Further, at the time of the incident, Defendants believed that Hendrix and Plaintiff were locked in separate cells, so there was no reason for them to think that Plaintiff was in danger. SUMF ¶¶ 58–59.

8

Because there is no evidence that Defendants were *aware* of any risk that Hendrix might attack Plaintiff, and the only evidence shows they were not, they could not have deliberately or recklessly *disregarded* this specific risk to Plaintiff's safety.  It is well-settled that prison officials are entitled to qualified immunity from claims arising out of a surprise attack by one inmate on another.  *Vandevender v. Sass*, 970 F.3d 972, 976 (8th Cir. 2020).  Accordingly, Defendants are protected by qualified immunity and entitled to summary judgment.

## CONCLUSION

For the reasons set forth above,

**IT IS HEREBY ORDERED** that Defendants' motion for summary judgment is **GRANTED**.  Doc. 104.

*Audrey G. Fleissig*
AUDREY G. FLEISSIG
UNITED STATES DISTRICT JUDGE

Dated this 1st day of March 2022.